This is the appeal of Christine Ferrando I'm sorry, Ferrando. I've got an extra N in there. I apologize. Mr. Comey, whenever you're ready. Good morning. It's a pleasure to be here 43 years after I was sworn in in this room by Luther Swigert and Tom Scruby. And also to be with Judge Flom who I tried his first very bank robbery case with when he was a district judge. So a special good morning to you to see you here. I'm here on behalf of four claimants, four distinct claimants who filed their appearance in the district court and who filed a petition. And that petition asked the district court to invoke supplemental jurisdiction, to exercise of supplemental jurisdiction, to adjudicate the claims of people who could not participate in the criminal case because they were not indicted. They were not included. And as a matter of law, they couldn't even join the case. And there was a motion to join the case by a third party that was denied by the district judge. The motion to intervene was absolutely denied as to the whistleblower. The whistleblower had come into the case and asked the district judge whether they could participate. And that motion was denied. One of the panels hearing this case before it came to you ordered us to talk about jurisdiction and two specific cases, Williams and Townsend. In Williams and Townsend, both of the parties were original parties to the case. So at the inception of the case, they had appearances on file. They were participating in the case all the way through. And at the end, judgments were coming to a head, but in two different ways. In that particular case in Williams, you're talking about a federal case. You're talking about execution of a tax lien. You're talking about a finite amount of money which was decided and then executed on. In Townsend, you were really talking about an Illinois law which allows multiple steps in foreclosure. Most states have that included in their foreclosure laws. And the people who were involved in that case had options after this property was ordered sold because the judge had to confirm the sale. And the only way you can appeal that in Illinois under Illinois law is after the judge confirms the sale and the money is converted into a finite amount of money. This case is more like Williams than it is Townsend because Williams is a matter of federal law. And Townsend is basically a case of state law where you're foreclosing on a home. Standing in this case is granted by a very unique statute which came out of forfeiture reform sponsored by Henry Hyde back in about 2000, almost 2000. For 10 years, there was debate in Congress about how to afford. I don't think the motions panel order asking you to address jurisdiction had to do with standing. There may be a separate standing question about your client's, Ms. Ferrando's, ability to represent the corporations of which she is a member. But I understand them to be independent claimants here. They're represented by you, not by her. Right. So that's a separate issue. I think the jurisdictional question that concerned the motions panel had to do with an interlocutory appeal of an interlocutory sale order. But it strikes me that the panel may have missed the elephant in the room, which is that your client's 853N petition was summarily dismissed, and that dismissal was embedded in the interlocutory appeal order. The dismissal of the 853N petition is clearly a final order. So the panel was concerned about finality, not standing. But we've got a final order here in the summary dismissal of the 853N petition. The government admits that. The government, in fact, asked to remand this case to fix the clear procedural error by the district court in summarily dismissing your client's petition in the context of that proceeding on the interlocutory sale matter. And it was curious to me that you resisted the remand, and now you're asking for precisely that relief. So the government offered you what you were asking for, and you didn't take it. You argued to the motions panel that there was something nefarious going on, I think, is the best way I can describe that pleading, and that because there was something nefarious going on, there was an attempt to dodge the mediation or something, the remand motion should be denied. So there's a lot of mysterious procedural missteps here that I don't quite understand. Maybe you can shed some light on them. Okay. Well, if I can throw five pages forward, I would say to you that we have a order denying Clayman's petition, which is erroneous as a matter of law. And the reason it's erroneous is none of the procedures Congress put in place with 853N were followed. And that's conceded, so we don't even need to talk about that. There's a clear procedural error here. The judge should not have dismissed that petition summarily, especially not in the context of motions that were under consideration at the time, having to do with an interlocutory sale and a request for inspection. Government admits that. So where does that leave us? The government is now saying, well, it's all harmless because the petition is facially defective on its face. Well, that's virtually almost a footnote on page 37 of their brief. I mean, the whole brief was all about what the judge didn't hear in this particular context. And then they say that it's harmless. I don't believe it's a harmless error to throw somebody out of court when they haven't had their day in court. I think it's a grievous error, and it's an error that this court has an opportunity, since I can't find any other circuit precedent under the circumstances we particularly have here that would guide district courts in their administration of these supplemental proceedings. Right. No, it's highly unorthodox. That's conceded now. But you didn't really engage in the government's merits arguments about the insufficiencies of the petition, the 853N petition, as a legal matter, that it insufficiently pleads your clients, all of them, interest in the property pursuant to the statutory test, which is not only an interest in the property in question but a prior interest prior to the fraud. Okay. But the position we're in today is we filed a petition initiating the proceeding. We made claim under oath. So that's the only evidence in this record that Christine Ferrando and then each of the individual companies under oath by the only person who can speak for the LLCs, because these are LLCs. The only person is the remaining member in the LLC who could sign the petition under oath and bring that to the attention of the court. Now, in the courts I've appeared in, when everyone claims there's no standing, the other side says generally, well, can I amend my petition? And the district court generally says, yes, you can amend that petition in accordance with the rule of civil procedure. I think it's 15. So you're given an opportunity to correct a pleading failure without being removed from the court altogether. But in this particular case, that never occurred. The government didn't bring that to anyone's attention until we're here in this court. In other words, the district judge never heard one word on the subject of standing. And this court's a correction of errors court, not a trial court in the first instance. That argument was not made. The government sat by for more than 300 days, three years in fact, without telling the district judge they didn't agree that Mrs. Ferrando or the three LLCs had no standing. I don't think the government's argument is that Christine Ferrando has no standing. She can bring her own personal claim. She just can't bring the personal claim of the LLCs. But again, my understanding is that she wasn't attempting to do that. If she had been pro se, there would have been a standing problem. But this was a counseled petition on behalf of her personal interests in the property as well as the interests of the LLCs. As a practitioner for 43 years, when I make a mistake on pleadings, usually a district judge says, go plead over. And there's an opportunity to correct what's brought to your attention. When an opponent says your documents are insufficient. Were you aware at the time of the litigation over the motion for the interlocutory sale and the inspection that the judge was considering dismissing the petition outright? Absolutely not. So that was not, was there a hearing or was this all on the papers? No, everything, Indianapolis is not like Chicago. I think there's a systemic difference between different courts in our circuit. And the systemic difference is we interact with our judges. I would see Judge Flom on any case I was on at least bi-monthly. And we would have a conversation in the courtroom. And when we were all done, they'd always say, is there anything else you want to add? You know, that's not the bar in Indianapolis. The bar in Indianapolis moves on paper. It came to me as a shock when I went to Indianapolis that I was dealing with a semi-appellate court in many regards. Because everything seemed to move on paper. And I was used to how wonderful we have it here because we interact with our judges. We literally are with them bi-monthly. And I missed the motion calls downstairs that the pandemic has washed away for a time. Sure. But nostalgia aside, I'm trying to get a handle on what was actually litigated in advance of the judge's decision. And apparently it was just the two motions, the interlocutory sale motion and the inspection motion. There was no, certainly no motion to dismiss by the government. And as is permissible under the rules, but there was no such motion. And there wasn't any embedded suggestion in the motion papers on the sale or the inspection that suggested that the judge take this opportunity to dismiss the petition. You have a laser-like focus on this record. That's absolutely correct. There was absolutely no communication with the district court. No mention by order that the court is sui sponte, you know, thinking about dismissing this. What's your position? No communication with the parties. No invitation to come into the courthouse. Nothing. All of a sudden the order comes rolling out of PACER. And that's the first notice we had that something was amiss here, that we were being removed from court and taken out of any standing to complain about the sale of the house and removed from suggesting that the terms the government was offering were commercially unreasonable. So let's say we were to— Do I have to reserve time? Oh, yeah. If you want to reserve your time, you can, and I'll save my hypothetical for— I knew you were going to get in under the wire. —for rebuttal. That's fine. No, please. I mean, but, you know. What you're asking us to do is remand based on the procedural error. Fine jurisdiction, remand based on the procedural error, and for you to have an opportunity to litigate the merits of your petition in the ordinary course in the district court. Correct? I think it's larger than that. And that is everybody knows that this court has been the leader in forfeiture law, starting with Judge Bauer in USA versus $509,000 and so forth. This court has showed a lot of leadership in establishing the standards of forfeiture. And so I think it's incumbent on the court to do more than just, you know, give us a rule order and send us back. I think it's important that the court establish what you expect from district judges under these circumstances in light of what Congress said it expected, that none of it was complied with here. Do you have a good faith basis to contest the defects that the government is arguing about the petition itself on its face? Yes. If I were in district court, I'd say, Judge, I'm not going to fight it. I'm going to ask leave to amend because that's what I would do in any case. I don't believe in wasting people's time if we can amend it quickly and get rid of the problem. Mr. Comey, one final question before you sit down. If we vacate and remand, is it your client's contention that the government has forfeited its right to reply or forfeited its chance to file a response of pleading? What should the posture be below if we do vacate? Well, obviously, I would appreciate that. I mean, I would appreciate that because they waited so long. I mean, Congress wanted this done in 30 days, but it's up for you to establish what you think the policy should be. Should this thing linger for three years and have a policy that, you know, that the district court can just ignore one of these things and let it roll? Thank you. Thank you. Ms. Rota. Good morning, Your Honors, and may it please the court. My name is Kelly Rota, and I represent the United States of America. This court is correct that the government's position was that a remand was the best course of action in this case based on the procedural errors with regard to the judges granting or denying the petition to adjudicate the delinquency of the validity of the appellant's claims. However, Your Honor, once this court denied that motion, the government took a deeper look into the record, the record that was before the court, the entire record of this case, and found that both of these motions are defensible, and we are asking the court to affirm the district court's decisions below. By both of these motions, you're referring to what? The motion for interlocutory sale, Your Honor, as well as the motion denying the petition for a claim. Well, there was no such motion on the latter point, right? The appellant filed a motion to adjudicate the validity of their claims, the 13 claims that they made, and that motion was denied. We're asking the court to affirm that denial. Okay, there was no motion to dismiss by you. No, there wasn't, Your Honor. As you can see in the government's pleadings, the government was in negotiations at the time. This case definitely has an unusual posture in forfeiture law. Typically, a motion for interlocutory appeal assumes just that, that it's interlocutory, that it's not happening at the same time that the case is reaching its final conclusion. And so as the motions that the government filed reflected, the government was in negotiation at that time. Had those negotiations broken down, we certainly would have filed a dispositive motion of practice that is seen in Rule 32.2, and we would have filed our motions to dismiss. However, standing before you now, defending this motion on the record, we find that the district court had before it enough to deny the petition because it was facially invalid and because it doesn't assert any legal claims. But there had been no motion to dismiss that would bring to the surface the defects that you're now litigating. So the arguments you're making now were not the basis on which the district court dismissed the petition. We don't know why the district court dismissed the petition because that wasn't before the court at the time. It was sua sponte. That's correct, Your Honor. I agree that it was a sua sponte decision. And the court's decision, the court's orders reflected that the court had reviewed the motions that the government had filed. And the court has before it the entire record, the 66-count indictment, the plea agreements from Joseph Ferrando, and the two indicted corporations who were represented by Ms. Ferrando in court. It had before it the transcript that talked about the sale of the property, talked about the notions as far back as six years ago that this house should have been considered for to be dissipated or liquidated as an asset and then held until the end of the answer. That goes to the question about whether the forfeiture orders were appropriate, not the interest of any of these petitioners and the nature, scope, type of interest, and whether or not any of those interests were prior to the fraud in this case. And that's the statutory question under 853N. So the district court had nothing in front of it on that question. That's the material point here. So to defend the district court's decision based on arguments that were not before it and on which the decision did not manifestly did not rest is an aggressive move. Let's put it that way. And I understand you were dealing with a motions panel order that said brief jurisdiction and then brief the merits. But I think the motions panel may have missed this point about the dismissal of the 853N petition, focusing instead on the interlocutory sale order. Yes, Your Honor. That's my best reading of what was going on with the motions panel. And those defects were recognized by the government when we asked to remand this case. The government's position today, though, is that even if the court did not have a motion to dismiss or a motion for summary judgment before it to decide these issues, these issues were in the record, particularly because this is a criminal forfeiture matter, Your Honor. And so what we have here ---- Well, it's an ancillary proceeding within a criminal forfeiture. Yes, Your Honor. The ancillary proceeding is governed by the normal rules of civil procedure, right? The interest, or that's the norm here. The property interests are litigated in the ordinary course within the confines of the ancillary proceeding. The judge never established an ancillary proceeding. It was nonexistent as far as I understand the record. Is that a fair statement? She adjudicated your interlocutory sale motion. She adjudicated the inspection motion and summarily dismissed the 853N petition without engaging the parties on it at all or convening an ancillary proceeding. Is there anything that I just said that misses something? No, Your Honor. I'd be happy to be educated if I'm missing something in the record, but I don't think I'm missing something. I think the government's position is that all of those motions were part of the ancillary proceeding. The motion to inspect and appraise the property showed the court that there was property that still needed to be considered within the ancillary forfeiture proceeding. The statute that governs the third-party interests ---- You didn't need an ancillary proceeding to initiate those motions, did you? No, Your Honor. We didn't need an ancillary proceeding. But I think the court, in looking at those motions and the arguments put forth by the government with regard to the property that was claimed in this case, that the court then looked at the entire record, saw what the preliminary orders of forfeiture, which had already established the nexus of these 13 assets, to the criminal activity in this case and made a determination that, yes, should this court remand, the government would absolutely file the dispositive motions necessary to show that the claim was defective and that Ms. Ferrando, while she had standing, did not have a superior legal interest and that the LLC certainly did not have standing because those were asserted as claims with Ms. Ferrando as a member of the LLC and no further assertment. The statutes governing the third party's interest in an ancillary criminal procedure, Your Honor, are very specific as to what is required, and the circuits have dismissed cases that have not met the requirements. So we believe that the district court, in looking at this entire record, could have found within the record the reasons to deny the petition. Well, Ms. Rota, I appreciate your saying she could have found, but did she find in any way by way of analysis other than the summary order? Your Honor, the… I mean, why should we do the work here, to be honest, if there's procedural deficiencies at the district court level? Yes, Your Honor, and as we have conceded from the beginning, there were those procedural errors, and we asked to have this case remanded and were denied on the basis of, you know, to consider the jurisdictional issues, and should this court remand, we still ask this court to consider the affirming the motion for interlocutory sale because we believe the court was well within its discretion in ordering that interlocutory sale motion that the interlocutory sale truly comports with Rule 32.2b-7 that articulates the reasons that an interlocutory sale can go forward, that is, when there are delinquent taxes or liens on a property, and also for good cause. And in this case, Your Honors, have both. You have a municipal lien holder that has a lien that continues to grow, and we have unpaid property taxes on the 23 Burning Hollow property. Additionally, this court could find that the interlocutory sale order is proper because of the good cause that was shown. As I said earlier, more than five years ago, the district court has in the record the consideration that this property should have been sold, that there were two homes that the Ferrandos owned, and the record at 350 in the colloquy with counsel, the counsel talks about that a thorough reading of the plea agreement, this would be Mr. Ferrando's plea agreement, will see that the house, they have two homes, and she's going to keep the one home that the forfeiture is not going to apply to, which the court would see later in the record is the Liddick Place House in Montfield, New Jersey. But to get the other home up and ready so that it can be sold, and that the government was kind enough to recognize her concerns in doing this. So the good cause granting that interlocutory sale motion was to, you know, it completely comports with the statute at 21-853-2 that the court can take or the government can take action to preserve the property so that the depreciation of the property will not affect the overall amount of the asset. Are you asking us to make any factual findings? No, Your Honor, I'm asking you to grant the motion for interlocutory sales, finding that the court did not abuse its discretion in granting that order. On the jurisdictional question, the dismissal of the 853N petition is a final order, so there's really no jurisdictional concern about that. We don't have to fit it within Townsend or Williams because there's nothing interlocutory about it. It's not comparable to a foreclosure. Those were foreclosure cases. That's what the motions panel was focused on. If this were an appeal only of the interlocutory sale order and there had been no dismissal of the petition, is there jurisdiction, is this a final order, or is there more to be done in the district court following the grant of a motion for an interlocutory sale in this context? Your Honor, we agree with the appellant that this case is more like the Williams case that found that the foreclosure order, the federal tax lien, was a final appealable order to this court. We believe the court has jurisdiction because the only issue, once the sale is granted and the court's order says that the property shall be sold and the money shall be deposited in a fund, the only issue after that would be how that money was dispersed. If the claimant would have any assertion, obviously the municipal lien holder would be able to get their money back. But there's no right of redemption. There's no judicial inquiry into whether there's fairness with regard to the sale. The sale order says the property shall be sold and the money shall be deposited by the U.S. Marshals Service. So for the purposes of the statute, Your Honor, we do believe that it is a final appealable order for this court's jurisdiction. What date did the government file its motion for interlocutory sale? We filed it, I believe, Your Honor, in March of 2020. You filed it or was that when the court ruled? I'm sorry, Your Honor. I correct myself. I believe that's when the court granted it. Yes. Wasn't there a significant gap in time between the filing of the motion and the ruling? Your Honor, the government filed first in, and I apologize I don't have the record right in front of me, but it was either in late 2019 or early 2020, we filed a motion to inspect and appraise property, and that was because some of the property that was subject to forfeiture in this case was in the hands of Mrs. Ferrando, still in her house. So that was worked through, and at the same time there were discussions and negotiations involving the interlocutory sale. I believe that the government may have filed the motion for interlocutory sale in early 2020, Your Honor, in January, and then the court did grant that in March. May I have it in front of me?  February. Of 2020. Apologize, Your Honor. Both of these motions were filed and granted the following month, together with the dismissal of the 853N petition. So it was just a month later. The original petition sat around for almost three years with nothing happening, right? Your Honor, if you look at the court's record, I know Appellant has said that nothing has happened, but within that time period there were multiple preliminary orders for forfeiture. There was a temporary restraining order issued to the municipal lien holder. There was another claim from one of the other defendants, Mr. Ducey. All of those things were done after the time that the petition to adjudicate. Oh, no, I understand that there was a lot going on in the forfeiture proceedings, but in terms of the ancillary proceeding to adjudicate the validity of these claimants' issues in the property, there was a significant delay before anything happened in that. Well, there was never a proceeding convened. That's the problem. The judge just ultimately dismissed the petition in the context of granting the interlocutory appeal. That petition was filed in June of 2017. In 2017, yes. And in 2018, Your Honor, both the appellant and the government filed a joint motion to restrain the municipal lien holder who was trying to collect on. And as the government has stated, both in its briefs and today, there were ongoing negotiations. Was the court aware of that? Yes, Your Honor. That was in our pleadings as well. So the judge was advised that there were ongoing negotiations on this petition, which may explain the delay? Your Honor, I believe that the government's pleadings indicated that the government was in negotiations. What pleadings are you referring to? There were no pleadings in the ancillary proceeding because there were no ancillary proceedings initiated. Yes, Your Honor. The motions for interlocutory sale, the motions for inspection and appraisal of property, and then in 2018, when the joint motion was filed asking to restrain the lien holder in this case, I'm not sure if it was specifically planned at that time, Your Honor, but certainly a joint motion before the court indicates that the parties are in agreement that this portion of this property should be preserved until there is a decision. So perhaps I'm not tracking this correctly. So is there like a two-year gap after that joint motion before the ruling by the district court? Yes, Your Honor. What transpired during those two years? With regard to this case, Your Honor, there were ongoing negotiations. There were also, as the forfeiture proceedings were proceeding against the other defendants, there was one additional claim to adjudicate, and there were preliminary and final orders of forfeiture that were related to the claims in this case as to SEMA and Caravan, which were the indicted corporations. So, and the district court was apprised of all that? Is that the reason why the decision was delayed? I mean, during these negotiations, you said two years. From the filing of the motion on the interlocutory to the ruling, I'm just trying to fill in that gap in time. What occurred there? You say there were ongoing negotiations? There were, Your Honor. I'm just trying to get to why we don't have a ruling with some dispatch, I guess, after the joint motion. Your Honor, even as Rule 32.2 contemplates in the ruling, matters of ancillary forfeiture proceedings are complicated proceedings involving multiple parties and moving parts, and I can't speak exactly for everything that happened between that time, but I would say that the government was in a good-faith position in negotiating. Thank you, Your Honor. Thank you. Thank you. Mr. Comey. I was present for the entire time. Ms. Rhoda came later. All right. Well, then, perhaps you can— So I can answer your question. Yes. Nothing went on during that period of time in terms of going anywhere beyond solving the problem with the attempt on the—collect the municipal taxes. That was an area of agreement. We entered into a joint motion to enjoin the purchaser of the taxes at a tax sale because the property couldn't be seized because of the lease pendants from the United States. Next thing I'd like to answer is Ms. Rhoda is incorrect. It's not a motion. It's a petition that initiates a proceeding, and it is a petition like you would get if you were a creditor and you got a judgment against somebody and you're now initiating garnishment, citation, any of the things that normally follow in a normal case. The next point I'd like to direct you to is our reply brief, and the opinion of Chief Judge Walton Platt in a parallel case involving Mrs. Ferrando, United States v. Mrs. Ferrando, ex rel. Chepenko, who was the whistleblower. And her—says something really important that can't be lost, and I hope it will find itself into an opinion that you write. Based on the principles, facts surrounding Christine Ferrando's involvement in the criminal case— and I have to turn the page—criminal matter, the court concludes applying privity collateral estoppel to establish her personal liability in this case would be patently unfair and offend principles of due process. Christine Ferrando appeared in court on a single day for a change of plea in a representative capacity. For Caravan and Seema Green, she did not appear in a personal capacity. She's a 51 percent owner of these LLCs. She is the only one who could sign an affidavit to come to court. There is no one else available to verify under oath what I believed in. You know, the law doesn't require a verified pleading, but she did file a verified pleading, and she initiated these supplemental proceedings. And the individual LLCs, contrary to the government's position, have standing. And had the government brought that to my attention, the first motion I would have made is ask them can we by agreement amend the pleadings because that's what a trial lawyer does. That's the first phone call when you get a motion attacking your pleading because all pleaders make mistakes. There's nothing a human being can do, but sometimes they make a mistake, and you're given an opportunity to correct it. I appreciate how sharp the questions were this morning. I would appreciate it because I've been involved in the forfeiture thing since we tried USA versus C.W. Wilson downstairs, and I was the first guy to have to argue on forfeiture. 156 Cadillacs, no man alive could drive. And I've been following forfeiture law since 1980. And this circuit is really the leadership circuit when it comes to forfeiture issues as to standing of people to come to court. Your standing jurisprudence wiped away the government's arguments that you had to do more than just claim an ownership interest. The jurisprudence you establish out of this will guide district judges throughout the country, and that's why I think it's very important that you think a little broader than what the government suggests here. And I don't think you can take what happens in the criminal proceeding. That would be like the judge in a garnishment proceeding taking the trial that occurred between two parties who were actually in court, evidence heard, all things decided, and then applying it against the bank that holds the money. In the garnishment proceeding. I mean, that's the best analogy I can come up with. I think we have the argument. Thank you. Thank you, and stay well until we all meet again. Thank you. Our thanks to all counsel. The case is taken under advisement.